UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD EUGENE PATRICK,

       Plaintiff,

           v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

       Defendant.

_____/

Civil Action No. 16-10338
Honorable Thomas L. Ludington
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 15, 16]

Plaintiff Richard Eugene Patrick appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the ALJ violated the treating physician rule and thus **RECOMMENDS** that:

- the Commissioner's motion **[R. 16]** be **DENIED**;

- Patrick's motion **[R. 15]** be **GRANTED;** and,

- the Commissioner's decision be **REMANDED**, pursuant to
  sentence four of 42 U.S.C. § 405(g) for further consideration
  consistent with this report and recommendation.

## I.   BACKGROUND

### A.   Patrick's Background and Claimed Disabilities

Born October 23, 1973, Patrick was 39 years old when he submitted
his applications for disability benefits in May 2013.  [ECF No. 10-5, Tr. 175].
He has GED, and past relevant work as a laborer.  [ECF No. 10-6, Tr. 216].
Patrick claimed disability due to "bipolar psychotic" and back pain.  [*Id.*, Tr.
215].  After a hearing on February 6, 2015, which included the testimony of
Patrick and a vocational expert ("VE"), the ALJ found that he was not
disabled.  [ECF No. 10-2, Tr. 17-38, 39-68].  The Appeals Council denied
review, making the ALJ's decision the final decision of the Commissioner.
[*Id.*, Tr. 1-4].  Patrick timely filed for judicial review.  [ECF No. 1].

### B.   The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability."  *See
Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the
"inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected to last

2

for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a

severe impairment or a combination of such impairments[2] for a continuous

period of at least 12 months, no disability will be found.  *Id.*  Third, if the

claimant's severe impairments meet or equal the criteria of an impairment

set forth in the Commissioner's Listing of Impairments, the claimant will be

found disabled.  *Id.*  If the fourth step is reached, the Commissioner

considers its assessment of the claimant's residual functional capacity, and

will find the claimant not disabled if he or she can still do past relevant

work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC,

age, education and work experiences, and determines whether the

claimant could adjust to other work.  *Id.*  The claimant bears the burden of

proof throughout the first four steps, but the burden shifts to the

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Patrick was not disabled.  At step one, she found that, although Patrick had engaged in work after his alleged onset date of July 1, 2011, it did not rise to the level of substantial gainful activity.  [ECF No. 10-2, Tr. 22].  At step two, she found that Patrick had the severe impairments of "polysubstance abuse; bipolar disorder; and post-traumatic stress disorder (PTSD)."  [*Id.*].  At step three, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 23].

Next, the ALJ found that Patrick had the RFC to perform a full range of work at all exertional levels but with these non-exertional limitations:

> [N]o climbing ladders and the like or exposure to obvious hazards.  The claimant can also: understand, carry out and remember simple instructions where the pace of productivity is not dictated by an external source over which the claimant has no control such as an assembly line or conveyor belt[,] make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is very repetitive from day to day with few and expected changes: and respond appropriately to occasional contact with supervisory personnel and coworkers whether there is no working in team or tandem with coworkers, and no contact with the general public.

[*Id.*, Tr. 25].  At step five, the ALJ found that Patrick could not perform any

4

past relevant work.  [*Id.*, Tr. 31].  With the assistance of VE testimony [*Id.*, Tr. 61-66], she determined at step five that Patrick could perform the requirements of representative occupations such as industrial cleaner, stores laborer and hand packager, and that those jobs existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 32].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has

been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

## III.   ANALYSIS

Patrick argues that the ALJ violated the treating physician rule and inappropriately considered Patrick's substance abuse in determining whether he was disabled. The Court agrees and recommends that this matter be remanded for reconsideration of Patrick's treating psychiatrist's opinions.

### A.

Before detailing the opinions from Leven Terejo, M.D., Patrick's treating psychiatrist, a review of his psychiatric history is warranted. Patrick was involuntarily admitted to Herrick Medical Center on February 11, 2013, after his mother, Jane Patrick, complained about his increasingly volatile behavior, use of verbal intimidation and poor functioning with respect to his activities of daily living. [ECF No. 10-7, Tr. 337]. Mrs. Patrick said that her

6

son had been sleeping with a crow bar, was throwing things, smashing coffee cups, and leaving food unattended that burned on the stove.  [*Id.*]. According to Mrs. Patrick, her son had been awake for days, had exposed himself to her, was responding to auditory hallucinations, and had trashed his girlfriend's house.  [*Id.*].  Patrick's girlfriend was alleged to have taken out a personal protection order, and Patrick was described as threatening to kill himself or others.  [*Id.*].

At his initial evaluation, Patrick's hygiene was unsatisfactory; he had racing thoughts, flight of ideas with pressured speech, and intense eye contact; his insight and judgment were impaired; and he was defiant, irritable and very volatile, wanting to leave right away. [*Id.*, Tr. 349]. The following day, when told that he could not leave, Patrick became angry and stated that he was going to break windows and break out of the hospital. [*Id.*, Tr. 372].  Patrick's diagnoses included bipolar disorder with psychiatric features, cannabis and nicotine abuse, and severe psychosocial stressors, and he remained in the hospital for eight days. [*Id.*, Tr. 337].

Two days after being discharged, Patrick returned to Herrick Medical Center, again involuntarily. He had stopped taking his medications and was smoking marijuana, causing him to again become paranoid, delusional, and belligerent. [ECF No. 10-2, Tr. 309].  Among other concerning behavior,

7

Patrick had threatened to push his mother down the stairs, told her to suck his private parts, and threatened to either "cut" or "gut" someone who had come to his mother's house to buy his car.  [*Id.*, Tr. 309, 317].  The police were called and, in addition to being returned for psychiatric care, he was arrested for assaulting, resisting, obstructing or causing injury to the police. [*See id.*, Tr. 415, 419-21 (detailing the arrest)].  Three officers had responded to the order to pick up Patrick on February 14, 2013, because he had run from and resisted them twice before, but this time Patrick kicked an officer in the nose and eye while resisting.  [*Id.*, Tr. 420].  A hearing was ordered for Patrick later that day due to his refusal to accept prescribed medication.  [*Id.*].  He was released from the hospital on February 20 with an adjusted regimen of medication, with an instruction that he be followed by a case manager, and with the diagnoses of bipolar disorder, current episode mania; polysubstance abuse; and severe psychosocial stressors. [*Id.*, Tr. 301, 309-10].

After this second hospitalization and through the date of the February 2015 hearing, Patrick routinely received psychiatric treatment at Lenawee Community Mental Health Authority (LCMHA), first from Murtaza Syed, M.D., and then, starting in October 2013, from Dr. Terejo.  [ECF No. 10-7, Tr. 297-305, 388, 397-404, 425-33, 435-38, 443-56, 458-61, 463-76, 473-

8

76, 491-94]. Patrick was accompanied by case manager Angela Pooley for most of these appointments, beginning in March 2013, [*id.*, Tr. 297], but received a new case manager in December 2014 because he had become inappropriate toward her. [*Id.,* Tr. 297, 463]. Case managers were assigned during this time period in order to monitor Patrick's symptoms and the side effects and compliance with medications. [*Id.*, Tr. 457]. And for a one year period, Patrick was subject to a court order that required him to take medications as ordered. [*See Id.*, Tr. 435].

Patrick was initially diagnosed by Dr. Syed with severe bipolar disorder (manic), cannabis dependence, and caffeine related disorder, and Dr. Terejo added a diagnosis of post-traumatic stress disorder in November 2013. [Tr. 297, 428]. The doctors described Patrick as angry, agitated, persecutory and irritable, with poor insight and judgment, paranoia, racing thoughts and loud, pressured speech – characteristics that resulted in job losses and relationship troubles. [ECF No. 10-7, Tr. 297-305, 388, 397-404, 425-33, 435-38, 443-56, 458-61, 463-76, 473-76, 491-94]. They described Patrick as hearing voices; these auditory hallucinations were noted during his hospitalization. [*Id.*, Tr. 298, 305, 317, 339, 392, 398, 431, 443, 448, 450, 453, 456, 463, 465, 491, 494]. Dr. Terejo found that Patrick's PTSD, which manifested with nightmares, flashbacks and

9

tremors, was caused by an upbringing that was marred by his mother physically and verbally abusing his father, and his father abusing alcohol, leading to his father's death from cirrhosis of the liver. [*Id.*, 388-39, 425, 443, 448, 453, 458, 463, 468]. Patrick had a strong family history of mental illness, including depression and suicide.  [*Id.*, Tr. 298, 496; ECF No. 10-6, Tr. 230].

Patrick's outbursts would include breaking things, punching walls, assaulting his girlfriend and tearing up her house.  [*Id.,* Tr. 388, 390, 392, 491, 497].  Although he had reported being in better control as a result of his treatment, he stated in January 2015 that "[h]e still punches the wall when angry but not as frequently."  [*Id.*].  Patrick also reacted poorly when Pooley stopped being his case manager in December 2014.  [*Id.*, Tr. 463-67].  Specifically, he reported increased anxiety, was ruminating and perseverating on his stressors, was mumbling to himself, made statements with a paranoid undertone, and overall showed a worsening of his mood and "psychotic and anxiety symptoms due to perceived abandonment by case manager and enduring psychosocial stressors."  [*Id.*].

In a six page psychiatric evaluation that was forwarded to the Commissioner in February 2014, Dr. Terejo detailed Patrick's history and prognosis.  [ECF No. 10-7, Tr. 388-96].  Dr. Terejo indicated that Patrick's

diagnoses were bipolar disorder-manic, PTSD, cannabis dependence and caffeine related disorder, and stated that he was prescribed Depakote, Prozac, and Risperadal to treat these disorders. [*Id.*, Tr. 388]. According to Dr. Terejo, Patrick was on time and attempted to engage in conversation at each appointment, but was unable to stay and left frustrated "even when the contact is non-confrontational." [*Id.*, Tr. 389]. "During appointments, Richard's face has red blotches on it, his teeth are clenched, jaw tight and he speaks forcefully. His hands are often in a fist and he jitters in his seat." [*Id.*]. Dr. Terejo reported that Patrick would force himself to hold it together during appointments, but the case manager would receive calls after his appointments from his mother or girlfriend wondering what happened because he would come home and start throwing things in the house. [*Id.*].

Patrick's mental illnesses interfered with his relationships such that he was "couch homeless," going from house to house and leaving when he got into arguments with his hosts. [*Id.*, Tr. 390]. Patrick told Dr. Terejo that his anxiety also interfered with his ability to work; he would have severe panic attacks prior to starting his work day, and would break things and use drugs or alcohol to alleviate the tension after the work day was over. [*Id.*]. "The voices in my head would just say over and over again to hurt someone so I could feel better." *Id.*

11

Dr. Terejo opined that Patrick would be able to keep jobs for extended period only if he worked alone; his paranoia and aggressive behaviors would result in him losing his job. [*Id.*, Tr. 393]. Patrick had been in crisis since 2011 without work and he had no stable living environment. [*Id*.]. Despite Patrick's treatment with Dr. Terejo, "he continues to struggle daily." [*Id*.]. According to Dr. Terejo, although the medications had kept Patrick out of jail and the hospital, he continued to experience paranoia, and he "struggles significantly with Bipolar and Post-Traumatic Stress Disorder which hinders his ability to work and maintain positive relationships with others." [*Id*.]. Dr. Terejo concluded, "A traditional work setting is not recommended for Richard due to his level of anger and uncontrolled behaviors . . . ." [*Id.,* Tr. 394].

Patrick states that Dr. Terejo also signed an August 2014 functional assessment of Patrick, but the ALJ found that "the signature on this document is not clear." [ECF No. 10-2, Tr. 30]. A comparison of signature on the February 2014 psychiatric evaluation with the signature on the August 2014 functional assessment renders the conclusion that both of those documents were both signed by Dr. Terejo.

12



| | |
|---|---|
| ECF No. 10-7, Tr. 394 (February 2014) | ECF No. 10-7 Tr. 400 (August 2014) |

In the functional assessment, Dr. Terejo opined that Patrick exhibited depressive symptoms, including a pervasive loss of interest in almost all activities; sleep disturbance; psychomotor agitation or retardation; thoughts of suicide; and hallucinations, delusions or paranoid thinking. [ECF No. 7, Tr. 397]. His manic symptoms were hyperactivity; pressure of speech; flight of ideas; decreased need for sleep; "involvement in activities that have a high probability of painful consequences which are not recognized"; hallucinations, delusions or paranoid thinking; and "[b]ipolar syndrome with a history of episodic periods manifested by full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." [*Id.*]. Patrick's anxiety-related disorder symptoms were motor tension; autonomic hyperactivity; apprehensive expectation;

vigilance and scanning; and "recurrent and intrusive recollections of a traumatic experience which are a source of marked distress." [*Id*.].

Dr. Terejo found that, as a consequence of these disorders, Patrick had extreme restrictions of activities of daily living and difficulty maintaining social functioning; had "deficiencies of concentration, persistence of pace resulting in frequent failure to complete tasks in a timely manner (in work or work-like settings); had "repeated episodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive functioning)"; and had "a residual disease process that causes the person to decompensate with even a minimal increase in mental demands." [*Id.*, Tr. 398].  He opined that Patrick was markedly impaired in his abilities to: remember locations and work-like procedures; understand and remember short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation.  [*Id.,* Tr. 399-400].

And according to Dr. Terejo, Patrick was extremely impaired in his abilities to: understand, remember and carry out detailed instructions;

14

maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with and proximity with others without being distracted by them; complete a normal workday and worksheet without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in work settings; set realistic goals or make plans independently of others; and maintain socially appropriate behavior and adhere  to basic standards of neatness and cleanliness.  [*Id.*].

## B.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's condition when that opinion is well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d

at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* The opinions of treating psychiatrists, in particular, are entitled to substantial deference due to their expertise in observing symptoms of mental illness.

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations and internal quotation marks omitted).

If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and ... sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R.

16

§ 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Courts will not hesitate to remand when the ALJ failed to articulate "good

reasons" for not fully crediting the treating physician's opinion. *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, the ALJ did not assign any particular weight to Dr. Terejo's

February 2014 psychiatric evaluation, but she stated that "the record does

not support that the claimant is 'unable to hold a job' when appropriate

limitations are established and he avoids substances," and that the

decision regarding whether a claimant is disabled is reserved for the

Commissioner.  [ECF No. 10-2, Tr. 30].  She did not address Dr. Terejo's

recommendation that Patrick not work in a traditional work settings, and

she provided no reasoning for rendering an RFC that states that Patrick

could "respond appropriately to the usual work situations," despite Dr.

Terejo's conclusion to the contrary.  [ECF No. 10-7, Tr. 394; ECF No. 10-2,

Tr. 25].  And in addition to wrongly stating that the signature on the August

2014 functional assessment was unclear, the ALJ stated in conclusory

fashion, "[T]he undersigned notes that the limitations indicated are not

supported by the objective medical record, including the claimant's own

reports," and gave the assessment no weight.  [ECF No. 10-2, Tr. 30].  This

analysis is insufficient; the ALJ did not explain how the record showed that

17

Patrick was employable in a traditional work setting, or how the copious

specific limitations Dr. Terejo identified in his functional assessment were

inconsistent with the "objective" medical record.

It is true, as the ALJ stated, that whether Patrick is totally disabled is

an issue reserved for the Commissioner, but she was still required to

consider Dr. Terejo's opinion on that issue.  Social Security Ruling 96–5p,

1996 WL 374183, at *2 (July 2, 1996), ("[A]djudicators must always

carefully consider medical source opinions about any issue, including

opinions about issues that are reserved to the Commissioner.").  The ALJ

gave no indication of giving careful consideration to the details set forth in

Dr. Terejo's six-page letter, including Patrick's behavior and physical

manifestations of mental illnesses during appointments, the reports of his

blow-ups after the appointments were over, his lack of a stable living

environment, or his reported daily struggle with bipolar disorder and PTSD

even with treatment.

Instead of showing any deference to Dr. Terejo's opinion, the ALJ

conducted her own analysis of Dr. Terejo's treatment records and rendered

her own conclusions.  [ECF No. 10-2, Tr. 27-29].  This was improper, as an

ALJ is not entitled to play doctor and substitute her own opinion for that of

the treating physician.  *Allen v. Comm'r of Soc. Sec.,* No. 12–15097, 2013

18

WL 5676254, *15 (E.D.Mich. Sept. 13, 2013) *adopted by* 2013 WL 5676251 (E.D.Mich. Oct. 18, 2013) (collecting cases).  The Commissioner argues that the ALJ "explained that the record did not support all of Dr. Tejero's conclusions," [ECF No. 16, PageID 596], as if the ALJ's expertise in assessing Patrick's psychiatric limitations were equal to that of Dr. Terejo. The ALJ is not a professional trained in the field of psychopathology, and she was required to give substantial deference to Dr. Terejo's expertise, despite the relative imprecision of his psychiatric methodology. *Blankenship,* 874 F.2d 1121.

The Court notes that the ALJ also considered the joint opinion of Brian Pearson Ph.D., and Kim Rodriguez, M.S.W., and the opinion of Donna Rinnas, Ph.D.,[3] neither of which assessed Patrick's functional limitations and both of which were based upon one-time examinations. [ECF No. 10-2, Tr. 29, citing ECF No. 10-7, Tr. 425-29, 478-80].  The ALJ gave these opinions moderate and significant weight, respectively – more deference than she gave to Dr. Terejo's opinions.  [*Id.*].  Doing so was contrary to the general rule that treating physician's opinions are given more weight than those from consultants.

---

[3] This forensic opinion was order by a state court for evaluation of competency to stand trial and criminal responsibility. [ECF No. 10-7, Tr. 415].

19

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F .R. § 404.1527(d)(2). *See also Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The ALJ also put emphasis on the fact that Patrick's Global Assessment of Function (GAF) score of 45 did not change from the time he began treating with Dr. Syed through his treatment with Dr. Terejo. [ECF No. 10-2, Tr. 27-28]. But there is no legal authority that required the ALJ to put stock in the GAF scores in the first place. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir.2006). What the ALJ was required to put stock in was the detailed, longitudinal and unique perspective offered by Dr. Terejo. Her failure to give good reasons for assigning no weight to his opinions constitutes reversible error.

## C.

Patrick also argues that the ALJ's analysis was contrary to 20 C.F.R. 416.935. He states that Section 416.935(a) requires the ALJ to make a determination of whether the claimant is disabled, and only afterwards determine under Section 416.935(b) whether the addiction is a contributing

20

factor.  Patrick cites *Williams v. Barnhart*, 338 F. Supp. 2d 849, 862 (M.D.

Tenn. 2004), and the opinions cited therein, including *Brueggemann v.*

*Barnhart*, 348 F.3d 689, 693–95 (8th Cir. 2003).  *Brueggemann* describes

the appropriate analysis as follows:

> Only after the ALJ has made an initial determination 1) that
> Brueggemann is disabled, 2) that drug or alcohol use is a
> concern, and 3) that substantial evidence on the record shows
> what limitations would remain in the absence of alcoholism or
> drug addiction, may he then reach a conclusion on whether
> Brueggemann's substance use disorders are a contributing
> factor material to the determination of disability. If this process
> proves indeterminate, an award of benefits must follow. The
> alternative procedure adopted by the ALJ in this case remains
> inconsistent with the regulations binding on claimants, the
> ALJs, and this court. The ALJ's decision reflects legal error.

*Id*.  The *Williams* court found that the ALJ's failure to cite Section 404.1535

or to follow the necessary steps that section requires to be reversible error.

The Commissioner responds that, since the ALJ found that Patrick

was not disabled, she did not have to follow the sequential described in

*Brueggemann*.  The Commissioner cites *Warren v. Comm'r of Soc. Sec.*,

No. 13-15230, 2015 WL 1245936, at *20 (E.D. Mich. Mar. 18, 2015), which

held, "Because plaintiff was found not to be disabled, the ALJ was not

required to decide the issue of whether substance abuse was material to a

finding of disability."  But the ALJ's language *does* suggest that she

considered Patrick to be not disabled *only* if he avoided marijuana. "The

21

record does not support that the claimant is 'unable to hold a job,' when appropriate limitations are established *and he avoids substances*." [ECF No. 10-2, Tr. 30 (emphasis added)]. If the ALJ did mean that Patrick is disabled so long as he smokes marijuana, Section 404.1535 would require her to follow the sequential analysis described in *Brueggemann*.

More significantly, Dr. Terejo based his opinions regarding Patrick's functional assessment on his bipolar disorder and PTSD, and not substance abuse. [ECF No. 10-7, Tr. 400]. And although Dr. Terejo recommended in his psychiatric evaluation that Patrick attend Narcotics Anonymous, he opined that bipolar disorder and PTSD were the causes of his work and relationship limitations. [*Id.*, Tr. 393-94]. For the reasons stated above, the ALJ did not provide good reasons for giving no weight to those opinions.

The ALJ should thus be instructed to, upon remand, reconsider her assessment that Patrick's disability was caused in part by his marijuana use in light of Dr. Terejo's opinions and, if necessary, employ the materiality analysis described in *Brueggemann*.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 16] be **DENIED**; that Patrick's motion

[ECF No. 15] be **GRANTED**; and that this matter be **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 8, 2017

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 8, 2017.

s/Marlena Williams____
MARLENA WILLIAMS
Case Manager
